JONAS MICHAEL MUSSER, APPELLANT, V. MICHAEL P. MUSSER, APPELLEE.

FILED NOVEMBER 13, 1912.  No. 17,041.

1. **Pleading:** AMENDMENT AT TRIAL: DISCRETION OF COURT. The original answer contained a plea of fraud, threats, and intimidation used to obtain the note sued upon, and also pleaded that the note was given upon a condition. The court during the trial permitted an amended answer to be filed pleading the condition, but omitting the other plea. *Held*, This was within its discretion and not erroneous.

2. **Parol Evidence:** CONDITION AFFECTING NOTE. In an action between the original parties to the instrument, it may be shown by parol that a promissory note was delivered upon a condition that it should only be payable upon a certain event. *Davis v. Sterns*, 85 Neb. 121.

3. **Bills and Notes:** CONSIDERATION. A settlement of a disputed claim may constitute a good consideration for a promissory note, provided that the claim is made by the payee in good faith and on reasonable grounds, even though he may be mistaken as to the basis of his claim.

4. ———: ———: ALTERATION OF NOTE: BURDEN OF PROOF. And when the dispute was as to whether a prior promissory note, which had been altered, was changed before or after its execution and delivery, if the claim of alteration after delivery was made upon reasonable grounds and in good faith, it was not incumbent upon the plaintiff payee to establish as a fact that the defendant maker altered the prior note after its execution.

APPEAL from the district court for Sheridan county: JAMES J. HARRINGTON, JUDGE. *Reversed*.

*J. E. E. Markley* and *A. W. Crites,* for appellant.

*John J. Sullivan* and *C. Patterson, contra.*

LETTON, J.

This is an action upon a promissory note for $3,000, executed by the defendant in favor of the plaintiff, and due and payable one year from date at Niles, Iowa. The defendant in his original answer admitted the execution and delivery of the note, but alleged that it was without consideration, and had been procured by threats, intimidation, fraud, and undue means, and further pleaded that it had been delivered upon a condition, which is also set out in the amended answer.

The amended answer admitted the execution and delivery of the note, but alleged that it was made without consideration and that it was executed under circumstances substantially as follows: That in 1899 the plaintiff and his wife executed a note to defendant for $10,500, secured by a mortgage on land in Iowa, payable five years after date at the Citizens Bank at Rushville, Nebraska; that in 1905 defendant went to Charles City, Iowa, to collect this note; that plaintiff then asserted he had written defendant in December, 1902, to send the note and mortgage and release of the same to the bank at Charles City for payment on or before January 1, 1903, so that he could make a deed to a purchaser of the farm, and that through the negligence of defendant to forward these papers to him he had lost the sale and had been damaged in the sum of $3,000; that it was then and there agreed that defendant should execute and deliver the note sued upon, to be held in trust by plaintiff until defendant should return to his home at Rushville, Nebraska, when, if he failed to find such a letter asking him to send the papers to Charles City, then plaintiff was to return to defendant the $3,000 note. Defendant denies that plaintiff requested him to send the note and mortgage and release to Charles City, denies that he was under any obligation to do so, or

that he contributed in any way to the damages claimed by plaintiff, but admits that on January 14, 1903, plaintiff requested him by letter to send him a release of the west half of the property described in the mortgage.

The reply pleads that the mortgage securing the $10,500 note provided that, in case of the sale of the land, the whole debt should become due and payable; that about November 1, 1901, plaintiff entered into a contract of sale of a portion of the land; that he requested defendant orally and in writing to send him a release of the mortgage, so that plaintiff might pay off the same and convey the land according to his contract; that defendant orally agreed to send the release before January 1, 1903, but failed and refused to do so and to accept the money due on the mortgage; that, by reason of such failure, plaintiff lost the sale of the land, was sued by the purchaser and compelled to pay a large amount of damages; that, when defendant was in Iowa to collect the $10,500 note, plaintiff refused to pay the same, for the reason that he had been damaged by the failure to release the mortgage, and because the note had been fraudulently altered; that he then claimed $3,000 damages, and that the note sued upon was executed in settlement of this claim, and in consideration that he would pay the altered note without suit. It is also alleged that the $10,500 note was originally made payable at the Citizens National Bank at Charles City, Iowa, and that after its execution the defendant, without his knowledge or consent, altered the same so as to make it payable at the Citizens Bank, Rushville, Nebraska.

The defendant is 76 years old, lives at Rushville, Nebraska, and plaintiff is his nephew. He testified that he went to Iowa in March, 1905, to collect the $10,500 note. "I gave this note to bring about the payment of another note that I held against him for damages if it were my fault that he had damages. I told him I would pay him damages if it was my fault and if he paid me the note; and he said that if he did pay me the note he would only have my word for it, would have nothing to show; and

then I said, 'I will give you my note for $3,000, and I will pay you my note if your letters are as you state when I get home and see them.'" He also says plaintiff and his wife accused him of committing a crime by changing the place of payment of the note, and that they had written him before this that the note had been altered. He denies specifically that the place of payment of the note was changed from "Citizens National Bank, Charles City, Iowa," to "Citizens Bank, Rushville, Nebraska," after its execution and delivery, and testifies that the place of payment was changed by Judge Burr, plaintiff's attorney, who wrote the note and mortgage at his (defendant's) request, and that this was done before the note was signed. He also testifies that in the final talk at the bank in Charles City, Iowa, Mr. May, the banker, figured up the amount due on the $10,500 note, and found it to be $11,281.55. Eleven thousand dollars was paid, part in April and part in May, 1905, by remittance to Rushville from the proceeds of a loan made by plaintiff. This left $281.55 still owing. No claim was made for this until this suit was brought, and no notice was sent plaintiff that defendant had found no letter, until after the note was due. The testimony of the plaintiff and defendant agrees in most particulars as to the facts surrounding the execution and delivery of the $3,000 note, with the essential difference that plaintiff testifies that the conversation as to going home and looking for the letter had no reference to the $3,000 note, but referred to the $281.55, balance due on the $10,500 note, and that defendant agreed that, if such a letter was found, defendant was to let him have the $281.55, while, if such a letter was not found, he was to pay the full sum. Both parties testify that early in 1902 defendant knew of the sale by plaintiff of a portion of the land, deed to be made January 1, 1903, and that plaintiff desired a release of mortgage by that time, but defendant says that plaintiff was to let him know definitely in time to send it. Defendant wrote the $3,000 note himself, and, when asked why he did not write the

condition upon which he claimed it was payable into the contract, answered that it was an oversight. He also says, in substance, that he knew that, if he commenced a foreclosure action, the plaintiff, his wife and his attorney would probably testify against him that the note was changed, and, if the defense was established, his note would be void, and this influenced him in making the $3,000 note.

Sarah E. Musser, plaintiff's wife, testified that, when defendant visited the house in 1905, he was told the trouble he had caused and the damage it had been to them, and that he finally said he was willing to make it good, and that he and her husband then went to town and made a settlement. Chesta A. Musser and Mayme L. Musser, children of plaintiff, testified to the same conversation. Plaintiff testified that the place of payment of the $10,500 note was altered; that he first learned of the change when it was sent to the bank for collection in the fall of 1905; that in his opinion the words "Rushville, Nebraska" are in defendant's handwriting. He further testifies that he wrote to defendant about sending the release of mortgage about December 1, 1902; that he was unable to perform the contract of sale on account of the release not being forwarded, and that he was sued by the purchaser on this account; that afterwards the land depreciated in value so that he could not sell it; that at the time the $3,000 note was given there was a dispute as to whether the note had been changed, and also as to whether defendant had been notified to send the papers and release; that defendant finally agreed to pay $3,000 in settlement. He denies that there was a condition that defendant should not pay if he failed to find such a letter on his return to Nebraska, but that what defendant said was when he got home and looked his letters over, "If I find one letter that you wrote me that you sold that farm, I will give you the $281.55;" that, if defendant failed to find the letter, he was to let plaintiff have the $281.55, and was to notify Mr. May. If he found no letter, Mr. May was to send him the $281.55, and, if he found the letter, Mr. May was to turn the

money over to plaintiff. Mr. May testified that defendant gave him instructions to send him at Rushville $11,000 in payment of the note and mortgage; that he asked defendant what to do with the "overplus," and that he said, "I am going home, and, if I find some letters of Peep, as we call him, I shall write you to give the money to him, if the letters are the way he says they are, and, if they are as I think they are, why the money is to come to me." He also says, "I didn't hear from M. P. Musser, so I turned the money, $281, over to the plaintiff, and remitted to M. P. Musser the $11,000. M. P. Musser never wrote me in any way about the $281." He further testifies that he is intimately acquainted with the handwriting of Judge Burr, and the words "Rushville, Nebraska," in the $10,500 note are not in his handwriting.

The jury found for defendant, and a judgment of dismissal was rendered.

The first assignment of error made is that the court erred in overruling the challenge for cause of the juror David Dullaghen. We think it would have been entirely proper to have sustained the challenge to this juror, who was a director in the bank of which defendant is a director and stockholder, had known the defendant for many years, and was on intimate and friendly terms with him. The defendant was an intimate friend, and the plaintiff was a stranger. The record seems to show that defendant's peremptory challenges were exhausted before this challenge was made. While the juror seems to have been candid and honest in his replies to questions propounded, the intimate nature of his social and business relations with the defendant was such that there was a probability that, however conscientious he might be, it would be difficult for him to be entirely impartial in such a doubtful case. We think the juror should have been excused, though we would be reluctant to reverse the case and grant a new trial for the sole reason that this juror was retained.

It is next objected that the defense in the amended answer is inconsistent with that in the original answer, and

that it was such a substantial change that the court should not have permitted the same; that one who has refused to perform a contract upon an assigned ground cannot, after litigation has begun, change his defense and base it upon some other inconsistent basis. We are unable to see such a decided difference between the two answers. It is true that the first pleads that plaintiff obtained the $3,000 note by fraud, and by threats and intimidation. These words are general terms. There are no specifications, except that plaintiff falsely contended that he had sold the land and was unable to make the transfer because defendant had failed after notice to release the mortgage. It further pleads the condition which is set out in the amended answer. We think it was entirely within the discretion of the court to permit the amended answer, and that plaintiff suffered no prejudice thereby.

The next complaint is that it was erroneous to overrule the motion of plaintiff to strike out the testimony as to the condition upon which he says the note was given, because its tendency was to impeach and add to the terms of a written instrument. This, we think, also must be disregarded. We have held that, as between the original parties, a contemporaneous agreement, by the terms of which a condition was established upon which the instrument became payable, may be established by parol testimony. *Davis v. Sterns,* 85 Neb. 121; *First Nat. Bank v. Burney,* 91 Neb. 269.

The district court also committed no error in overruling a motion of plaintiff for a peremptory instruction to find in his favor. While the execution and delivery of the $3,000 note was admitted, the vital issue remained whether there was a consideration for the note, and whether it was executed and delivered upon the condition that it should only be payable in the event that defendant found a letter requesting him to send the release of mortgage before January 1, 1903.

Plaintiff complains of the giving of instruction No. 2.

We are inclined to the view that this instruction placed an undue burden upon defendant, in that it required him to establish by a preponderance of the evidence, among other things, that the place of payment of the note was at the Citizens Bank at Rushville, Nebraska. The presumption is that any alterations shown upon the face of the note were made before it was signed and delivered, and the burden of proving an alteration lies upon the person who asserts it to have been made. *Dorsey v. Conrad,* 49 Neb. 443; *Colby v. Foxworthy,* 80 Neb. 239. It is perhaps subject to criticism in some other respects, but, if error was made in giving it, it seems to us to be rather to the prejudice of defendant than plaintiff.

We are of opinion that instructions No. 4 and No. 6 are erroneous, for the reason that they make it essential to recovery that the plaintiff prove to the satisfaction of the jury that, after the plaintiff and his wife gave the $10,500 note, the defendant altered and changed the place of payment of same. Instruction No. 6 is as follows: "The jury are instructed that, if you find from the evidence that the plaintiff refused to pay said $10,500 by reason of damages alleged to have been sustained through the negligence of the defendant in failing to send a release of $10,500 mortgage to a bank in Charles City, Iowa, and the plaintiff also refused to pay said $10,500 note under the claim that the place of payment of said note had been altered and changed by the defendant, and you further find from the evidence that, after the plaintiff and his wife gave said note of $10,500, the defendant did alter and change the place of payment of said note, and there was a dispute between the plaintiff and defendant. as to whether or not the plaintiff had sustained damages and the amount thereof, and that, under these circumstances and for the purpose of settling said matter, the defendant herein gave to the plaintiff the promissory note sued upon, then this would be a good and valid consideration for the making of the said note, and the plaintiff would be entitled to recover."

This instruction stated certain conditions which it became necessary for the evidence to establish in order to constitute a good and valid consideration for the making of the note and to entitle plaintiff to recover: (1) That the plaintiff refused to pay the $10,500 note by reason of the damages alleged to have been sustained; (2) that he also refused to pay, under the claim that the note had been altered; (3) that the defendant did alter and change the note; (4) that there was a dispute as to whether plaintiff had sustained damages; (5) that for the purpose of settling the matter the defendant gave the note sued upon. We think it was not essential for the plaintiff to establish the fact that the defendant altered and changed the $10,500 note. If the note showed upon its face an alteration, and the evidence is such as reasonably to justify the conclusion that the plaintiff in good faith believed that the note had been changed after it was signed and delivered, and there was an honest and well-founded difference between the parties as to whether such alteration had been made, this, in connection with the dispute between the parties as to the liability of defendant for damages incurred by reason of his failure to send a release of mortgage to plaintiff, if this claim was also made in good faith and on reasonable grounds, constituted such a controversy that a settlement of the same would constitute a good consideration. It is not the fact of alteration which is essential, it is whether or not there was a well-grounded reason for this assertion by the plaintiff, and that he made the same in good faith.

Complaint is made as to a number of other instructions asked by the defendant and refused. It is unnecessary to discuss each of these separately. Some of them are erroneous, in that they omit the element of good faith on the part of the plaintiff in making the charge that the note was altered and in making the claim for damages. Some of them, however, contain statements as to issues which should have been submitted to the jury, though perhaps not in the exact language of the requests.

The question whether, conceding that there was an adequate consideration, the note was delivered to plaintiff upon the condition that it should not be payable unless defendant on his return to Rushville found a letter written prior to January 1, 1903, requesting a release of the mortgage, seems not to have been submitted to the jury at all, except in the sixth paragraph of instruction No. 2, and, even then, in terms which were perhaps too general for the jury to extract the thought. We think that the plaintiff's side of the case should have been presented more fully.

There were really only two issues in the case: First. Was there a good consideration for the $3,000 note? Second. If there was such a consideration, was the note delivered upon a condition. We think the instructions given fail to submit these issues clearly. The judgment of the district court is therefore reversed and the cause remanded.

REVERSED.