JAMES J. CHALUPNIK, APPELLANT, V. IRVIN S. BRANT, APPELLEE.

279 N. W. 159

FILED APRIL 8, 1938. No. 30296.

*James P. Marron* and *Frederick M. Deutsch,* for appellant.

*Webb Rice, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE, CARTER and MESSMORE, JJ.

PAINE, J.

The trial court sustained a demurrer to the original petition for damages for breach of a contract, and then sustained a motion to strike out a large part of an amended petition, and, after sustaining another demurrer, dismissed the amended petition. Plaintiff appeals.

This lawsuit is based upon a written contract between the plaintiff and defendant, dated December 15, 1933, which provided, among other things, that as Chalupnik, the plaintiff herein, and second party in said contract, was operating a creamery at Verdigre, and was well acquainted with the creamery business in north Nebraska, "his good-will and advice is of value to the new organization to be made by first party, and first party desires to compensate second party for such advice and good-will."

This contract further provided that, when the new corporation to be formed at Norfolk was organized, "10% of which stock is to be assigned and transferred to second party for the considerations hereinbefore stated." It was provided that such 10 per cent. of the stock should be issued to second party "without any consideration other than that hereinbefore stated."

The plaintiff brought suit, based on this contract, exhibit A, attached to the petition, and set up that the defendant has wholly failed and refused to issue the stock as provided in the contract, and plaintiff prayed for damages in the sum of $10,000. Demurrer being filed was argued and sustained, but plaintiff was given permission to file an amended petition, which was duly filed.

The defendant filed a motion to strike out 14 paragraphs of plaintiff's amended petition, which set up an alleged oral contract, which it was alleged attempted to vary and contradict the written contract, exhibit A, attached thereto. The district court sustained this motion and a de-

murrer to such amended petition. Plaintiff electing to stand upon said demurrer, and not to plead further, the said petition was dismissed. The sustaining of the motion to strike and the sustaining of the demurrer are set out as errors of the court.

The appellant presents as his first proposition of law that "the recitals of a written instrument as to consideration are not conclusive, and it is always competent to inquire into the consideration and show by parol or other evidence what the real consideration was." We are cited to *Hartman v. Lipovsky*, 122 Neb. 823, 241 N. W. 563, as his authority, in which case it was held that, when the contract contained the words "$4,000 in cash, the receipt whereof is hereby acknowledged," it is a recitation of fact, and not a contractual part of the contract, and that such an acknowledgment of the receipt of consideration may be explained or contradicted by parol evidence. 4 Neb. Law Bulletin, 132, sec. 10, discusses this point, and sets out that, when the consideration is promissory or contractual in its nature, it cannot be varied by parol, citing many Nebraska cases.

It may be admitted that, if the contract in the case at bar was ambiguous, parol evidence might be admissible, but in this case the court can easily determine its full meaning when construed as a whole, and the intention of the parties stands out very clearly.

The oral contract, set out in the amended petition, which was stricken out by the trial judge on motion, set out an entirely different agreement than is disclosed in the written contract which is attached to the amended petition.

This court has adhered rather closely to the parol evidence rule, as discussed in *Theno v. National Assurance Corporation*, 133 Neb. 618, 276 N. W. 375, and in our opinion the trial court was right in sustaining the motion to strike out many paragraphs of the amended petition setting out oral agreements between the parties.

After all such paragraphs of the petition as referred

to an oral agreement were stricken out, it left the written contract, which states near the end that it contains a correct statement of facts, and this can hardly be doubted. In another of the closing paragraphs it states that the 10 per cent. of all the stock of the corporation is to be transferred and conveyed without any consideration other than that hereinbefore stated, which was the advice and good-will of Mr. Chalupnik, but the next paragraph limits the advice and good-will to that which does not conflict with his own interest, and thus limited he agrees to do all he reasonably can to assist in the success of the creamery company. The stock that was to be given him in the sixth paragraph of the contract (although it is not so numbered in the original) was some 30 shares of stock, of the par value of $10 each, and on the failure to give such stock suit is brought for damages of $10,000.

The demurrer was sustained by the trial court on the ground that the contract lacked mutuality, in that it did not obligate Mr. Chalupnik to furnish other than his good-will and advice, and it has been held many times that good-will is not a sufficient consideration for an executory contract.

"Reciprocal promises as the basis of a valid agreement must be equally obligatory upon the parties, so that each may have an action thereon; otherwise such agreement is *nudum pactum*." *State v. Holcomb*, 46 Neb. 612, 65 N. W. 873.

"Contracts entered into or promises made on the basis of relations of friendship and good-will, unsupported by pecuniary or material benefit, create at most bare moral obligations, binding only on the conscience, and a breach thereof presents no cause for redress by the courts." *Rask v. Norman*, 141 Minn. 198, 169 N. W. 704, 17 A. L. R. 1296.

If the defendant and appellee was suing the plaintiff and appellant on his promises as set out in the written contract, could he recover damages for failure to per-

form? We do not believe he could. He asserts that his part of it was performed before the writing was drawn up, and that the only obligation was to transfer the stock to him. If so, it was *nudum pactum*. The district court dismissed the action on the theory that nothing had been done under the contract which legally entitled him to the $300 worth of stock, or to damages because the stock was not delivered. This court had before it a case involving the same Norfolk creamery, entitled *Elvidge v. Brant,* 131 Neb. 1, 267 N. W. 169.

We have examined the record in this case, and find that no prejudicial error was committed by the trial court, and the judgment of dismissal is

AFFIRMED.